UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARSHA T. ROUSSELL                                        CIVIL ACTION

VERSUS                                                    NO. 20-2857

HUNTINGTON INGALLS, INC., *et al.*                        SECTION M (2)


**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendant ViacomCBS, Inc., f/k/a CBS Corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation. ("Westinghouse").[1]  Plaintiff Marsha T. Roussell responds in opposition,[2] and both parties reply in further support of their respective positions.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

I.      **BACKGROUND**

This is a personal injury case arising from alleged exposure to asbestos.  On November 21, 2019, Roussell was diagnosed with malignant mesothelioma.[4]  Roussell alleges that her mesothelioma was caused by second-hand exposure to asbestos from her father, Asward P. Theriot, and uncle, Tracy Theriot, who both worked at Avondale Shipyard ("Avondale") at various times.[5]  Asward worked in an office at Avondale in 1957 and 1958.[6]  Asward also worked in an

---

[1] R. Doc. 107.
[2] R. Doc. 126.
[3] R. Docs. 130; 132.
[4] R. Doc. 1-2 at 2.
[5] R. Docs. 1-2 at 2; 1-3 at 3-5.
[6] R. Doc. 1-2 at 2.

office at Celotex.[7]  Tracy worked at Avondale from September 20, 1943, through March 19, 1945, and, again, from October 21, 1955, through November 3, 1960, at which time he transferred to Hopeman, an Avondale subcontractor.[8]

Roussell was deposed on July 21, 2020, and January 8, 2021.[9]  She testified that she did not have any personal knowledge of Asward's asbestos exposure at Avondale or Celotex, nor did she have any knowledge of Tracy's alleged asbestos exposure at Avondale.[10]  She testified that she was not sure what Tracy did at Avondale, but he was a carpenter by trade.[11]  Roussell did not know the manufacturer or brand name of any of the equipment her uncle may have worked with or around at Avondale and the name "Westinghouse" was not familiar to her in connection with Tracy's work at Avondale.[12]

## II.   PENDING MOTION

Westinghouse filed the instant motion for summary judgment arguing that, in light of her deposition testimony, Roussell has no evidence that Asward or Tracy worked with or around Westinghouse products, or that she was exposed through Asward or Tracy to asbestos dust attributable to Westinghouse products.[13]  Thus, argues Westinghouse, there is no evidence that asbestos dust related to Westinghouse was a substantial contributing factor in causing Roussell's mesothelioma.[14]

In opposition, Roussell argues that evidence from other asbestos-exposure cases demonstrates that Tracy was likely exposed to asbestos dust attributable to Westinghouse when he

---

[7] R. Doc. 107-5 at 6.  Roussell does not claim second-hand exposure to Westinghouse-connected asbestos from her father's work at Avondale or Celotex.
[8] R. Docs. 15-1 at 5; 15-5 at 2.
[9] R. Docs. 107-4; 107-5.
[10] R. Doc. 107-4 at 9.
[11] *Id.* at 8.
[12] *Id.* at 10-11.
[13] R. Doc. 107-1 at 1-8.
[14] *Id.* at 8.

worked at Avondale from September 1943 through March 1945, and, again, as a carpenter from October 1955 through November 1960.[15] She also contends that she was secondarily exposed to Westinghouse-related asbestos fibers on Tracy's clothes when he helped her father build the family home.[16] As evidence of Tracy's exposure to Westinghouse-related asbestos dust, Roussell first cites the deposition testimony of James Clark Jr. (from his own asbestos-exposure litigation), who worked as an electrician's helper at Avondale for some months in 1963 and 1964.[17] Clark testified that there was wire insulation on the outside of electrical cable that could be cut or shaved when connecting it.[18] Next, Roussell cites the deposition testimony of Golzie Danos (from his own asbestos-exposure litigation), who worked at Avondale from 1965 to 1977 as an electrician, in which he testified to working with GE welding cable that contained asbestos in the presence of other craftsmen.[19] Roussell then cites deposition testimony regarding Westinghouse's development of fire-retardant micarta products that were used by Hopeman from 1956 to 1994, including for installation on Coast Guard vessels built at Avondale during the period.[20] Roussell also points to testimony of Jerry Savoie, an Avondale laborer from 1961 to 1971, who testified that he cleaned up insulation products aboard vessels under construction and the work generated airborne dust.[21] Roussell further provides testimony regarding invoicing documents and ships built at Avondale from 1938 through 1990.[22] According to Roussell's industrial hygiene expert, Jerome Spear, an Avondale carpenter tasked with building partitions for sleeping and eating quarters and bulkheads would have done work similar to Hopeman employees.[23] He further says

---

[15] R. Doc. 126.
[16] *Id.* at 2-4.
[17] *Id.* at 4.
[18] *Id.*
[19] *Id.* at 4-5.
[20] *Id.* at 5-6.
[21] *Id.* at 6.
[22] *Id.* at 7.
[23] *Id.*

that asbestos dust on Tracy's clothes from such work would have exposed Roussell by being re-entrained in the family home Tracy helped to build.[24]   Finally, Roussell's expert pulmonologist, Dr. Judd Shellito, testified that there is no known threshold level of asbestos exposure that causes mesothelioma, so all such exposures above background level are causative of the disease.[25]

In its reply memorandum, Westinghouse argues that none of the evidence offered by Roussell raises a genuine issue of material fact regarding whether she was exposed to asbestos dust attributable to Westinghouse, much less that it was substantial factor in bringing on her mesothelioma.[26]   Westinghouse posits that Roussell cites no testimony connecting Tracy to Westinghouse-related asbestos dust.[27]   Further, Westinghouse points out that Roussell testified that her family moved into their home in December 1954, and Tracy did not return to Avondale until 1955.[28] Thus, says Westinghouse, Roussel logically could not have been exposed to dust from Avondale on Tracy's clothes during the construction of the home or residually thereafter.[29]

In her surreply, Roussell argues that she cannot, nor should she be required to, put forth direct testimony that Tracy worked with Westinghouse's products because he died long ago and was never deposed.[30]   She argues that the circumstantial evidence she has produced is sufficient to overcome summary judgment.[31]   Roussell argues further that Gravois worked at Avondale from 1959 to 1984 and recalls Hopeman employees sawing and cutting boards  and that such work produced dust.[32]   Consequently, reasons Roussell, because Tracy was a carpenter at Avondale

---

[24] *Id.*
[25] *Id.*
[26] R. Doc. 130.
[27] *Id.*
[28] *Id.* at 8.
[29] *Id.*
[30] R. Doc. 132 at 1.
[31] *Id.* at 1-3.
[32] *Id.* at 1-2.

while it used asbestos-containing wallboard made by Westinghouse, he must have been exposed to asbestos dust from it and transferred that dust to her.[33]

## III.    LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014).  Unsubstantiated assertions, conclusory

---

[33] *Id*. at 2-3.

allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

**B.  Liability for Asbestos Exposure**

To prevail in an asbestos case under Louisiana law, a plaintiff must prove by a preponderance of the evidence that she was exposed to asbestos from the defendant's product and the exposure was a substantial cause of her injury.  *Rando v. Anco Insulations Inc*., 16 So. 3d 1065, 1088 (La. 2009).  When there are multiple causes of injury, "a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm."  *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 122 (La. App. 2005) (citing *Vodanovich v. A.P. Green Indus., Inc*., 869 So. 2d 930, 932 (La. App. 2004)).  Because there is a medically demonstrated causal relationship between asbestos exposure and mesothelioma, every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma.  *McAskill v. Am. Marine Holding Co.*, 9 So. 3d 264, 268 (La. App. 2009) (observing that the substantial-factor "burden can be met by simply showing that [the plaintiff] was actively working with asbestos-containing materials").  "Asbestos cases typically involve multiple defendants and courts have analyzed the cases under concurrent causation, a doctrine which proceeds from the assumption that more than one defendant substantially contributed to the plaintiff's injury."  *Adams*, 923 So. 2d at 122 (citing *Vodanovich*, 869 So.2d at 933).

Because, as both Westinghouse and Roussell acknowledge, there is no direct evidence that Roussell (or Tracy) was exposed to asbestos dust attributable to Westinghouse, the question presented is whether there is sufficient circumstantial evidence to create a fact issue as to such exposure.  There is not.  None of the evidence cited by Roussell even circumstantially connects Tracy to Westinghouse-related asbestos, much less herself.  Although Westinghouse does not contest that Tracy was a carpenter at Avondale from 1955 to 1960, it correctly observes that there is no evidence establishing his job duties, which Avondale yard he worked at, whether he worked

on land or vessels, or what products or materials he worked with or around.[34]   Westinghouse also correctly points out that the "Westinghouse invoicing" and deposition testimony Roussell cites deal with years that do not correspond to Tracy's employment at Avondale and thus do not connect him to Westinghouse products.[35]   Further, Roussell's industrial hygiene expert, Spear, has no personal knowledge or expertise concerning the work of carpenters at Avondale from 1955 to 1960, and hence, cannot connect Tracy to Westinghouse products.[36]   Finally, because Roussell testified that her family home was completed in 1954, before Tracy returned to Avondale in 1955, the clothes he wore during its construction could not have been the source of her alleged second-hand asbestos exposure.   Moreover, although Roussell claims that she saw Tracy occasionally at family functions during the years he worked at Avondale, there is no evidence that he wore his work clothes to those family functions.   In sum, Roussell offers no evidence – direct or circumstantial – that she was exposed to asbestos from Westinghouse products, much less that any such exposure was a substantial cause of her mesothelioma.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Westinghouse's motion for summary judgment (R. Doc. 107) is GRANTED, and Roussell's claim against it is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 14th day of March, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[34] R. Doc. 130 at 2.
[35] *Id.* at 3-5, 6-7.
[36] *Id.* at 5-6.